UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GLENDA RIGGINS | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:15-CV-00048 |
| | § | |
| HOUSTON HOUSING AUTHORITY | § | |
|     *Defendant*. | § | |

**MEMORANDUM AND RECOMMENDATION**

Before the Court on referral from United States District Judge Lynn N. Hughes (Dkt. 5) is Defendant's 12(b)(6) Motion to Dismiss (Dkt. 10). Plaintiff Riggins filed this § 1983 action claiming that Defendant Houston Housing Authority (HHA) violated her procedural and substantive due process rights under the Fourteenth Amendment when HHA terminated her Section 8 housing voucher. After reviewing the record, the Court recommends that the motion be GRANTED.

**BACKGROUND**

Through the Housing Choice Voucher program, the Department of Housing and Urban Development (HUD) makes partial rent payments to subsidize affordable housing. 24 C.F.R. § 982.1(a). Local public housing agencies (PHAs) administer the program. *Id*. HHA is one of these PHAs, providing vouchers to eligible families who use them to pay for private housing.

The HUD regulations prohibit members of the Section 8 household from engaging in "drug-related criminal activity or *violent criminal activity*." 24 C.F.R. § 982.551(l) (emphasis added). Section 982.551(l) cross-references to § 982.553, which focuses specifically on terminating assistance based on criminal activity. A PHA may terminate assistance if it finds, based on a preponderance of the evidence, that a household member engaged in prohibited criminal activity. 24 C.F.R. § 982.553(c). Section 982.553(c) permits such a finding "regardless

of whether the household member has been arrested or convicted for such activity." If only some of the family members are responsible for the violation leading to termination, the PHA may allow the other family members to continue receiving assistance, but "may impose . . . a requirement that other family members who participated in or were culpable for the action or failure will not reside in the unit." 24 C.F.R. § 982.552(c)(2)(ii).

The HUD regulations direct the PHAs to adopt standards for terminating assistance due to violent criminal activity. 24 C.F.R. § 982.553(b)(2). Section VI of HHA's Administrative Plan sets forth HHA's operational procedures, including procedures for terminating assistance based on criminal activity. HOUSTON HOUSING AUTHORITY, ADMINISTRATIVE PLAN FOR SECTION 8 HOUSING PROGRAMS 43–56 (Oct. 2014). Program participants are required to recertify annually. *See id.* at 43–44. As part of the annual recertification process, HHA conducts criminal background checks on household members, and Section VI(L)(7) provides that "information discovered from these background checks that reveals a program violation may lead to termination." *Id.* at 51–52.

If HHA finds a program violation and decides to terminate a participant's assistance, the participant may request an informal hearing to challenge the termination under Section VI(P). *Id.* at 53. "In a timely requested informal hearing regarding a decision to terminate assistance, HHA has to show by a preponderance of the evidence that the notice of termination is supported." *Id.* The participant is given fifteen days from the date of the pre-termination notice to request an informal hearing. *Id.* at 54. If HHA does not receive a timely request, the participant is deemed to have waived her right to an informal hearing. *Id.*

Plaintiff Glenda Riggins is a former HHA voucher program participant. On November 13, 2012, HHA sent Riggins a notice that her voucher would be terminated at the end of

December because her son and household member, Alvin Riggins, failed a criminal background check during an annual recertification screening. Dkt. 6 at 19. Attached to the notice was a Harris County record indicating that Alvin had been indicted for murder. *Id.* at 21–22. The notice also stated that Riggins could submit a written request for an informal hearing to challenge the decision and that such request, if timely filed, would suspend the termination until completion of the hearing process. *Id.* at 20. The deadline for filing a request was November 27, 2012. *Id.*

On November 30, Alvin's case was dismissed due to a missing witness, with the State reserving the right to refile at a later date. *Id.*, Ex. 2. That same day, Riggins submitted her request for an informal hearing, three days after the deadline had passed. *Id.*, ¶ 38. HHA denied Riggins's request as untimely and terminated her assistance on December 31, 2012. *Id.*, ¶ 39.

On July 19, 2013, Riggins sent a letter to the HHA's Board of Commissioners ("the Board"). *Id.*, ¶ 43. In the letter, Riggins explained that the criminal case against Alvin had been dismissed and asked the Board to retroactively reinstate her assistance. *Id.* at 16–17. The letter also set forth the same claims Riggins makes in her Amended Complaint. There is no indication that the Board ever responded to the letter. Murder charges were refiled against Alvin on July 25, 2013, to which Alvin eventually pleaded guilty.[1]

Riggins filed this suit on January 8, 2015, and filed an Amended Complaint on March 2, 2015. Riggins invokes 42 U.S.C. § 1983 to present two major claims against HHA. First, she claims that HHA and the Board violated her substantive due process rights by terminating her voucher based solely on Alvin's indictment for murder. She argues that an indictment alone can never satisfy the preponderance of the evidence standard of § 982.553(c). According to Riggins, by terminating her voucher based on clearly insufficient evidence, HHA arbitrarily and capriciously deprived Riggins of her property interest in continued housing assistance in

---

[1] At a hearing held on September 21, 2015, Plaintiff's counsel informed the Court of Alvin's plea agreement.

violation of the Fourteenth Amendment. *See* Dkt. 6 at 12. Second, Riggins raises a procedural due process claim stemming from her July 19, 2013 letter to the Board. Riggins argues that the Board, in failing to retroactively reinstate her housing assistance, effectively ratified the termination and the evidentiary basis for the decision. Although she does not challenge the constitutional sufficiency of the hearing opportunity provided before the termination date, she claims that she was constitutionally entitled to a second hearing opportunity to challenge the Board's ratification of the termination.

HHA filed its Motion to Dismiss on March 26, 2015, and Riggins responded on April 16, 2015 (Dkt. 12). The Court held a motion hearing on September 21, 2015.

## ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of an action when the complaint, on its face, fails "to state a claim upon which relief can be granted." In considering a 12(b)(6) motion to dismiss, the court must accept as true all well-pleaded facts and view the allegations in a light most favorable to the non-movant. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). While the complaint is not required to contain detailed factual allegations, it must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

### A. *Procedural due process*

The Due Process Clause of the Fourteenth Amendment "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To properly present a procedural due process claim, a plaintiff must allege that (1) the state interfered with a liberty or property interest protected by

the Fourteenth Amendment, and (2) the procedures followed by the state were constitutionally insufficient. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

As explained by the Fifth Circuit, "no denial of procedural due process occurs where a person has failed to utilize the state procedures available to him." *Rathjen v. Litchfield*, 878 F.2d 836, 839–40 (5th Cir. 1989). In *Rathjen*, a city employee, in the wake of a performance reprimand, negotiated a voluntary demotion with her supervisor. *Id.* at 837–38. The supervisor never complied with the agreement, and the employee was eventually terminated. *Id.* at 838. Although the plaintiff was aware that she could file a grievance over the supervisor's actions with the City Civil Service Commission, she instead filed a procedural due process claim in federal court. *Id.* at 839. The district court entered judgment for the plaintiff, but the Fifth Circuit reversed, holding that the plaintiff could not have been "deprived of a constitutional right to procedural due process because she failed to resort to the city's grievance procedure for a remedy." *Id.* at 841.

The Seventh Circuit similarly held in *Dusanek v. Hannon* that the "availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure." 677 F.2d 538, 542–43 (7th Cir. 1982). Dusanek, a tenured teacher, brought a § 1983 claim against the school board alleging that he was deprived of his property interest in employment without a hearing. *Id.* at 540. The state tenure system provided procedures for school officials to request a medical investigation of a teacher suspected of suffering a medical illness that interfered with teaching duties. *Id.* at 542. If the exam results were adverse to a teacher, state procedures presented the teacher with a choice between requesting medical leave of absence or refusing leave and challenging the results in a hearing. *Id.* Dusanek was presented

with this choice after an adverse investigation and chose to request leave rather than proceed with a hearing. *Id.* In concluding that there was no denial of due process by the state, the *Dusanek* court explained that "a state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Id.* at 543.

In *Alvin v. Suzuki*, the Third Circuit held that a plaintiff bringing a procedural due process claim "must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." 227 F.3d 107, 116 (3d Cir. 2000). Alvin, a tenured pharmacology professor at UPitt, claimed that he was deprived of several tenure benefits because of his success in private ventures that competed with certain university services. *See id.* at 111. Although Alvin wrote many letters presenting his complaints to a variety of university administrators, he never complied with the requirements of the faculty handbook's two-step grievance process, which designated a specific administrative contact person to handle grievances. *See id.* at 118. The court held that Alvin's "battery of letters to the right people in the wrong manner, and the wrong people in the right manner, does not allow him to sustain a claim that the procedures he did not use were constitutionally flawed." *Id.*

Although Riggins does not present a procedural due process claim based on public employment, the reasoning of *Rathjen*, *Dusanek*, and *Alvin* remains equally applicable to the termination of her Section 8 housing assistance. Just as Dr. Rathjen was aware that she could file a grievance with the Civil Service Commission, Riggins was aware that she could halt termination proceedings and challenge the HHA's decision by filing a timely written request for an informal hearing. Even though the termination letter clearly indicated how and when to file the request, Riggins chose not to file her request until three days after the deadline had passed.

Nearly seven months after HHA terminated her assistance, Riggins sent a lengthy letter of appeal to the Board. Just like the plaintiff in *Alvin*, however, Riggins failed to follow the administrative procedures provided. No regulatory or administrative authority designates the Board as the appropriate administrative body to send appeals of termination decisions. Rather, the termination letter expressly required a written request to be filed with the Hearing Officer. Similar to the plaintiff in *Dusanek*, Riggins chose, either consciously or through her own carelessness, not to avail herself of the procedural protections offered by the HHA.[2]

Procedural due process in the context of termination of welfare requires that the recipient receive "timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Goldberg v. Kelly*, 397 U.S. 254, 267–68 (1970). Riggins received her termination notice over one month before the effective termination date. The notice identified the specific violation providing the basis for termination and spelled out the procedures to request an informal hearing. While Riggins points to the procedural protections of Part VI(P) of the HHA Administrative Plan, including her right to be represented by counsel and to present evidence, these rights are only guaranteed upon a timely request for an informal hearing. By her own admission, HHA offered her an opportunity to defend against the termination. She simply did not take it.

Riggins attempts to sidestep the timeliness issue by arguing that the Board ratified the termination by failing to reinstate her Section 8 voucher after receiving her July 19, 2013 letter, and that the Board might have relied in part on the re-filing of charges against Alvin. To the

---

[2] At the motion hearing, Plaintiff's counsel suggested that Riggins was likely waiting on the results of Alvin's dismissal hearing before sending her informal hearing request. Counsel confirmed that Riggins does not contend that HHA interfered in any way with her ability to timely request a hearing. In fact, Riggins does not challenge the constitutional sufficiency of the pre-termination notice or hearing opportunity at all. Riggins's procedural due process claim focuses exclusively on the Board's alleged ratification of her termination in July 2013.

extent its ratification was based on evidence not available at the time of the initial termination decision, she argues, the Board deprived her of an opportunity to seek an informal hearing challenging the sufficiency of the new evidence. Recognizing this argument, however, would permit a complainant to bypass existing administrative procedures and unilaterally create a due process right to a hearing conducted by a body completely uninvolved in the termination decision. Riggins argues that she can ignore the existing appeals procedures, send a letter seven months later to an administrative body that does not review terminations, and then claim that the body's mere receipt of her letter entitled her to an additional hearing opportunity. Procedural due process guarantees Riggins an opportunity to be heard—it does not guarantee her a hearing at any time and in any forum she chooses to request it. The HHA provided Riggins with notice and an opportunity for an informal hearing to challenge the termination. The Constitution does not require anything more. Riggins does not plead sufficient facts to state a plausible procedural due process claim.

### B. *Substantive due process*

Riggins also claims that HHA and the Board, by relying solely on an indictment to satisfy the preponderance of the evidence standard necessary to make a finding of violent criminal activity, arbitrarily and capriciously deprived her of her property interest in violation of her substantive due process rights.

"Substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights." *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000). To properly present a substantive due process claim, a plaintiff must show (1) a liberty or property interest protected by the Fourteenth Amendment that (2) was deprived by the government in an arbitrary, irrational manner. *See id.*

There is no fundamental constitutional right to housing. *See Lindsey v. Normet*, 405 U.S. 56, 74 (1972). When the interest involved is not fundamental, the court reviews the government's challenged actions using the rational basis test—if it is "at least debatable" that "a rational relationship exists between the [policy or decision] and a conceivable legitimate [government] objective," there can be no substantive due process violation. *Simi Inv. Co.*, 236 F.3d at 249 (quoting *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996)). Where property is taken in compliance with procedural due process requirements, the Fifth Circuit has questioned whether "there is any interest left which may be denied in violation of substantive due process." *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1231 (5th Cir. 1985).

Riggins chose not to avail herself of the process made available by HHA, yet claims that the very same process she waived was constitutionally inadequate. By her own admission, had she taken advantage of her hearing opportunity, she would have been able to challenge HHA's termination decision by presenting evidence with counsel present, and HHA would have borne the burden of proving, by a preponderance of the evidence, that a member of the Riggins household had engaged in violent criminal activity. As discussed above, the pleaded facts show that HHA fully complied with procedural due process requirements. Consequently, the Court fails to see any plausible interest left which may be denied in violation of substantive due process when (1) Riggins does not dispute that violent criminal activity, including murder, is good cause for termination, (2) HHA provided proper notice and an opportunity to challenge the sufficiency of the murder evidence, but Riggins failed to take advantage of it due to no fault on

the part of HHA, and (3) the HUD regulations expressly permit a finding of violent criminal activity without requiring an arrest or conviction for that activity.[3]

Viewing the pleaded facts in a light most favorable to Riggins, at most she presents a situation in which HHA terminated an entire household's Section 8 housing assistance based on the murder indictment of one household member, with the program participant consciously waiving her right under the Administrative Plan to challenge the grounds for the termination. These allegations do not state a plausible claim that HHA acted arbitrarily or irrationally in violation of the Fourteenth Amendment.

## CONCLUSION

For the reasons set forth above, the Court recommends that Defendant HHA's Motion to Dismiss for Failure to State a Claim be GRANTED and Plaintiff's Amended Complaint be DISMISSED WITH PREJUDICE.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. Failure to file timely objections precludes appellate review of factual findings or legal conclusions, except for plain error. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72.

Signed at Houston, Texas, on September 25, 2015.



Stephen Wm Smith
United States Magistrate Judge

---

[3] At the motion hearing, Riggins's counsel informed the Court that Riggins's ultimate objective is to seek a new hearing in which she can invoke 24 C.F.R. § 982.552(c)(2)(ii) and Section VI(H) of the HHA Administrative Plan to seek continued assistance on the condition that Alvin will never reside in the household again. The Court acknowledges that it is within HHA's regulatory authority to impose such a condition and that HHA does not claim that other members of the household were in any way involved in the prohibited criminal activity. However, that authority is entirely discretionary—HHA has no regulatory or administrative duty to grant a request for continued assistance to innocent household members. Moreover, the time for making such a request was at an informal hearing *before* household assistance was terminated, not months or even years after assistance ended.